FILED
01 OCT 18 PM 2:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| RICKY SEARCY,  )  <br> )  <br> Plaintiff,  )  <br> )  <br> v.  )  <br> )  <br> LAUDERDALE COUNTY COMMISSIONER,  )  <br> JACKIE RIKARD, SHERIFF BILLY  )  <br> TOWNSEND, OFFICER SHORTER, OFFICER  )  <br> D.D., NURSE CINDY, and OFFICER GORDON  )  <br> HARRIS,  )  <br> )  <br> Defendants.  )  | CV 00-J-1273-NW <br><br><br> ENTERED <br> OCT 18 2001 |

## MEMORANDUM OF OPINION

Plaintiff Ricky Searcy is an inmate in the Alabama penal system presently incarcerated at Holman Correctional Facility, who filed this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff initially file his complaint in the United States District Court for the Middle District of Alabama on March 22, 2000, naming as defendants the Lauderdale County Commission, Dr. Schaffer, Jacqueline Rikard, and the medical staff of the Lauderdale County Jail. Plaintiff's case was transferred to this Court on May 8, 2000, pursuant to 28 U.S.C. § 1404 because the defendants and all actions about which plaintiff complains occurred in the Northern District of Alabama.

In an amended complaint, plaintiff alleges that he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America while he was incarcerated in the Lauderdale County Detention Center and names as defendants, the Lauderdale County Commission, Jackie Rikard, Sheriff Billy Townsend, Officer Lee Short, Officer

40

Demetria "DeeDee" Savage,[1] Nurse Cindy, and Officer Gordon Harris.[2] Plaintiff alleges that he was denied adequate medical treatment and subjected to cruel and unusual punishment while incarcerated in the Lauderdale County Detention Center. As compensation for the alleged constitutional violations, plaintiff seeks release from segregation, the charges brought against him expunged, in addition to compensatory and punitive damages for mental anguish, and stress.

Plaintiff initially complained that he had requested an appointment with a physician and a psychiatrist and stated, "I was denied medical treatment and was beaten down by Lauderdale County Off. Harris and one officer name or called [illegible] the brutality was harsh I [illegible] was put in seg and charged with assault on and [sic] officer was place on transfer to Kilby Correctional with the mental stress physco [sic] illness which violates 8 and the 14th amendment." (Doc.#1).

Plaintiff was twice ordered to amend his complaint to more fully explain the nature of his complaint and more fully identify the defendants against whom he was making his complaint. Ultimately the magistrate judge held a screening conference with the plaintiff on December 13, 2000, in order to determine the nature of plaintiff's complaint. Based on the information gathered in that conference the defendants were identified as the Lauderdale County Commission, Jackie Rikard, Sheriff Billy Townsend, Officer Shorter, Officer DeeDee, Nurse Cindy, and Officer Gordon Harris.

Following the screening conference, the Court entered an Order for Special Report directing

---

[1] Plaintiff did not provide full names or correct spellings of some the defendants names. The Court has made corrections based on information provided by the defendants.

[2] Plaintiff named Dr. Schaffer, a psychiatrist at the Veterans Administration Hospital in Tuscaloosa, Alabama, as a defendant in his original complaint. During a screening conference conducted by the magistrate judge on December 13, 2000, plaintiff stated that he had not intended to sue Dr. Schaffer. On January 26, 2001, all claims against Dr. Schaffer were dismissed and Dr. Schaffer was dismissed as a defendant.

that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report addressing the factual allegations of the plaintiff's complaint. Based on the information gathered at the screening conference, the Court interpreted plaintiff's complaint to state the following:

1. That during 15 months' incarceration at the Lauderdale County Jail between September 1998 and December 1999, defendants Lauderdale County Commission, Jackie Rikard, Sheriff Townsend, and Nurse Cindy violated his Eighth Amendment right to be free of cruel and unusual punishment by failing to provide him with necessary medical treatment for his manic-depressive illness; specifically, he alleges that they often failed to provide medication prescribed to control the illness.

2. That on an occasion in the 1999, plaintiff's Eighth Amendment right to be free from cruel and unusual punishment was violated by defendants Rikard, Townsend, Harris, Officer Shorter, and Officer Deedee, when plaintiff was beaten by the defendants, resulting in injuries to him.

The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

The defendants filed a special report accompanied by copies of applicable documents from plaintiff's inmate file and the affidavits of Sgt. Gordon Harris, Dr. Duff Austin, Deputy Lee Short, Officer Alexandra Layne Brockwell, a/k/a Alexandra Johnson, Sheriff Billy Townsend, and Jail Administrator Jackie Rikard. Thereafter, plaintiff was notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. Plaintiff

was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff responded with an unsworn, uncertified document which begins with another request for appointment of counsel. This document is clearly not an affidavit as required by FED. R. CIV. P. 56(e), nor does it satisfy the verification requirement of 28 U.S.C. § 1746. Consequently, the plaintiff's response will not be considered in determining the propriety of summary judgment. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Inmates, Washington County Jail v. England*, 516 F. Supp. 132, 138 (E.D. Tenn. 1980), *aff'd*, 659 F.2d 1081 (6th Cir. 1981). *See also Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 148 n.1 (11th Cir. 1990).

To the extent plaintiff is again requesting the Court appoint him an attorney to represent him in this case, his motion is due to be denied. (See, Doc.#29).

### SUMMARY JUDGMENT STANDARD

Because the special report of the defendants is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendants, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56*. In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th

Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## DISCUSSION

Plaintiff was incarcerated in the Lauderdale County Detention Center (LCDC) from the time of his arrest on September 29, 1998, until he was transferred to Kilby Correctional Facility on December 10, 1999, following his conviction on charges of third degree assault and negligent homicide on September 30, 1999. (Doc.#30 Rikard affidavit). On March 23, 2000, after he was transferred to Kilby, plaintiff filed this lawsuit complaining that he had been denied adequate medical treatment and subjected to excessive force while incarcerated at LCDC.

**Exhaustion of Administrative Remedies**

The defendants specifically dispute each of plaintiff's claims, but more importantly they state that this action is due to be dismissed because plaintiff failed to exhaust the administrative grievance procedures available to him in the Lauderdale County Jail as required by the PLRA and failed to exhaust the remedies available to him through the State of Alabama Board of Adjustment.

**1. PLRA**

In 1996, Congress enacted the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) in an attempt to control the flood of prisoner lawsuits. One provision of the PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

Plaintiff's claims that he was denied adequate medical treatment and subjected to excessive force while incarcerated in the LCDC are clearly complaints about the conditions of the jail. Because plaintiff's claim falls within those parameters, plaintiff must exhaust "such administrative remedies as are available," prior to filing his lawsuit. However, at the time plaintiff filed his lawsuit he was no longer incarcerated in the LCDC and he no longer had the administrative remedies of the LCDC available to him. Therefore, plaintiff has exhausted the administrative remedies available to him, regarding his complaints about conditions at the LCDC, and he is not barred from filing this civil action in federal court. *See, Garner v. Weeks*, 253 F.3d 711 (11th Cir. 2001)(unpublished table decision).

**2. The Alabama State Board of Adjustment**

Defendants also claim that plaintiff has not pursued his claim through the Alabama State

Board of Adjustment. The Alabama State Board of Adjustment is a legislatively created body with the power and jurisdiction to hear specifically enumerated claims against the State of Alabama, its agencies, commissions, boards, institutions, or departments. *See* §§ 41-9-60, 41-9-62, ALA. CODE. The Alabama Supreme Court has held that the purpose of the Board of Adjustment is "to extend[ ] a measure of compensation or relief to citizens entitled thereto, who unfortunately suffered injury occasioned by the state or one of its agencies, commissions, boards or institutions or departments, while engaged in the performance of the sovereign functions or duties of the state, and for which the rule of sovereign immunity exempts the state and its respective agencies, commissions, boards, institutions or departments from any other duly recognized form of legal action to compensate for such unlawful act and proximate injury." *State ex rel. McQueen v. Brandon*, 12 So.2d 319, 325 (1943). Thus, "[t]he Board of Adjustment has jurisdiction over claims against the state *that are not justiciable in the courts because of the state's constitutional immunity from suit*." *Matthews v. Alabama Agricultural & Mechanical University*, 716 So.2d 1272, 1281 (Ala. Civ. App. 1998) (emphasis added) (*citing Lee v. Cunningham*, 176 So. 477 (1937)). *Accord Vaughan v. Sibley*, 709 So.2d 482, 486 (Ala.Civ.App.1997) (the "Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from being made a defendant"). It is also clear that the Board of Adjustment lacks jurisdiction over claims cognizable in the Alabama courts. *Hawkins v. State Board of Adjustment*, 7 So. 2d 775, 776 (Ala. 1942).

At the time of the incident about which plaintiff complains, defendants were the Sheriff Billy Townsend of Lauderdale County and correctional officers at the Lauderdale County Detention Center, serving at the pleasure of Sheriff Townsend. As such, the defendants would have been

entitled to sovereign immunity under the Eleventh Amendment from claims for money damages stated against them in their official capacity. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989) (Eleventh Amendment bars § 1983 lawsuits against county sheriffs in their official capacities); *Carr v. City of Florence,* 916 F.2d 1521 (11th Cir. 1990) (sheriff's Eleventh Amendment immunity extends to deputy sheriffs because of their "traditional function under Alabama law as the sheriff's alter ego"). As is required by 28 U.S.C. § 1915A, this Court screens all complaints filed by prisoners prior to the service of process. Any claims for money damages stated against a county sheriff or his deputies in their official capacities are dismissed prior to service pursuant to 28 U.S.C. § 1915A(b)(2) and the Eleventh Amendment.

Plaintiff did not, in his complaint or in any other document submitted to the Court, state his claims against the defendants in their official capacity. Consequently, the claim has, since the inception of this case, been treated by this Court as stated against the defendants in their *individual capacity only*. Where a § 1983 claim is stated against a defendant in his individual capacity, he is <u>not</u> entitled to Eleventh Amendment immunity and the state courts, as well as in this court, have jurisdiction over such a claim.[3] It therefore clear that the Board of Adjustment would have no jurisdiction over a claim stated against the defendants in their individual capacity only. As the Alabama Court of Civil Appeals has recently observed:

> "Because the Board of Adjustment's purpose is to provide for a measure of compensation for injury suffered at the hands of those entitled to immunity, it certainly seems inappropriate for a claimant to be required to submit a claim to the Board when the persons who are responsible for the injury are not immune from suit."

---

[3] State courts and federal courts have concurrent jurisdiction over claims filed pursuant to 42 U.S.C. § 1983. *Felder v. Casey*, 487 U.S. 131, 139 (1988); *Arkansas Writer's Project, Inc., v. Ragland*, 481 U.S. 221, 234 (1987).

*Horton v. Briley*, 792 So. 2d 432, 435-436 (Ala.Civ.App. 2000).

It appears that plaintiff has exhausted all administrative remedies available to him and his case is properly before this court.

**Inadequate medical care**

During most of the time plaintiff was in the LCDC he was a pretrial detainee. The Due Process Clause of the Fourteenth Amendment requires a state to provide a pretrial detainee "with some minimal level" of "such basic necessities as food, living space, and medical care." *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). The due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), "the Supreme Court held that deliberate indifference to [a convicted prisoner's] serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence of a serious medical need; if so, we must then consider whether [the defendant's] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187 (quoting

9

*Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). "[T]he medical need of the prisoner need not be life threatening" to be considered "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).

The second part of the inquiry -- whether the response of the defendant amounted to deliberate indifference -- is itself a two-part determination. A defendant may be held liable for an Eighth Amendment violation only if he had knowledge of the [plaintiff's] particular medical condition, *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay access to medical care or to interfere "with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. at 104-05. *See also Mandel v. Doe*, 888 F.2d at 788. *See generally Farmer v. Brennan*, 511 U.S. 825, 833-840, 114 S.Ct. 1970, 1977-81 (1994). "Mere negligence or medical malpractice" on the part of the defendant is not sufficient to support an Eighth Amendment claim. *Mandel v. Doe*, 888 F.2d at 787-88. *See also Barfield v. Brierton*, 883 F.2d 923, 939 (11th Cir. 1989). Therefore, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

The LCDC has a full time nurse who conducts daily sick call, evaluates requests for medical treatment, and provides treatment for minor or routine medical problems. Dr. Duff Austin conducts weekly sick call and is available at other times to answer questions or respond to emergencies. (Doc.#30 Austin affidavit). If treatment by a specialist is needed, the medical staff will make that

referral and, if an inmate wants to see his own physician, the nurse will coordinate the visit. In the event of an emergency that cannot wait for Dr. Austin to be contacted, the inmate is taken to the emergency room at the E.C.M. Hospital. Inmates are provided medication as prescribed by a physician. If an inmate is already taking a prescription medication at the time of his incarceration he must provide a prescription and it will be dispensed by the medical staff.

At the time plaintiff was booked into the jail on September 29, 1998, he was too intoxicated to complete the inmate medical history form and basic information was obtained from earlier incarcerations. There was nothing in prior records to show that plaintiff was taking medication regularly and he did not have any medication with him at the time he was arrested. Over the next fourteen months plaintiff submitted numerous requests for medical care for complaints of pain from old injuries, anemia, colds, and skin problems. (Doc.#30, Exh.4). Plaintiff was examined and treated by either the nurse or doctor for these various complaints on at least eighteen occasions during his incarceration.

Plaintiff also requested a referral to a psychiatrist at the V.A or Riverbend Mental Health Center. C. Lowther, R.N. attempted to make that referral and made the following notation on the medical request form plaintiff submitted on October 13, 1998.

> 101398 . . . V.A. Hospital states he has hx. of non-compliance, will not provide any assistance @ this time. Faith Harbin contacted @ Riverbend, states Mr. Searcy had seen Dr. Glaister in 1994, was also non-compliant @ that time. C Lowther, RN

On October 3, 1999, plaintiff submitted a request for treatment for "left foot possable [sic] brokebone [sic], then insect bite + [illegible]." Plaintiff was examined by Dr. Austin who reported that "plaintiff started shouting and threatening me and clinic nurse! - he was forcibly removed from the clinic." There is also the following notation in the file:

11

100799

> Mr. Searcy was brought to medical at his request for numerous c/o. Dr. Austin was doing his interview and Ricky began to state that the D.C. was not giving him his medications as ordered. I informed Dr. Austin that Ricky is a V.A. patient and all his medications come from there. His last appointment with the V.A. was cancelled due to Ricky going to court and causing a great deal of disturbance which resulted in the Judge ordering him being removed back to his cell and to stay there until a later date. The V.A. appointment had to be cancelled. When I spoke with them the nurse at the V.A. stated they would not allow him his medications until he was seen. We have had no chance to transfer him there due to the transport officer being busy with court errands. I have ordered meds from a local pharmacy for Ricky at county cost. He then began to threaten to "bite to the bone" of Ms. Rikard and jumped off the table and made a threatening move toward her. I ordered him to back off with a threat of physical use [sic]. He did back down but refused to speak with the doctor. At this time I had him placed in a C Cell for observation of his bizarre behaviour [sic]. I feel that he is a threat to all officers and should remain in a lockdown cell. I advised hall officers of this and Ms. Rikard also. Ricky is unstable and his mood swings are unpredictable. C. McKnight, R.N.

While the information regarding plaintiff's psychiatric problems are meager, and there is only plaintiff's statement that he suffers from manic depressive disorder, the court will assume that he has a "serious medical need." It is clear that the defendants were aware of plaintiff's psychiatric problems. It is equally clear that none of the named defendants was deliberately indifferent to plaintiff's condition and his need for treatment. Defendants have submitted evidence that establishes the following: (1) plaintiff did not have medication in his possession when he was arrested; (2) defendants contacted the agencies plaintiff claimed were treating him, but his own failure to comply with treatment programs in the past resulted in the VA hospital and Riverbend Mental Health Center refusing to provide prescription medication for him without a current evaluation; (3) at some point plaintiff was examined by doctors at the VA and medication was prescribed; and (4) prescription medication was bought for plaintiff at county expense when it was not available from the VA. Plaintiff has not submitted any evidence to show that either Jackie Rikard or Nurse Cindy who are

the only remaining defendants against whom he makes this claim, were deliberately indifferent to his need for medical attention. At most, defendants were negligent in not providing transportation to appointments at the VA or Riverbend so that his prescriptions could be kept current, but there is nothing to indicate that their failure to act were done deliberately in order to deny him medical treatment. The defendants have responded to plaintiff's generalized allegations despite the vagueness of those allegations, by submitting affidavits, as well as plaintiff's jail medical records. It is clear from the record before the Court that the named defendants were not deliberately indifferent to plaintiff's medical condition. The defendants are therefore entitled to summary judgment on plaintiff's claims that he was denied adequate medical treatment while in the Lauderdale County Detention Center.

### Excessive force

Plaintiff claims that he was beaten by defendants Rikard, Townsend, Harris, Officer Shorter, and Officer DeeDee (Demetria Savage). Plaintiff does not state when the incident happened, but in his request for relief he asks that his record be expunged of charges brought against him. As a result of an incident which occurred on November 23, 1999, plaintiff was convicted of third degree assault and given a sentence of six months. The Court will assume that this is the incident about which plaintiff complains.

On November 23, 1999, Officer Brockwell and Savage were passing out personal hygiene items to the inmates. Plaintiff began complaining to Officer Savage that she had not picked up his laundry the day before and he was not going to pick up the food trays from the lock down inmates for her. Officer Savage told plaintiff he would have to have his laundry ready at the same time as other inmate in order to have it picked up. Plaintiff became agitated and began cursing Officer

13

Savage. Plaintiff was warned that he would be locked down if he did not stop his tirade. When he continued yelling and cursing, Officer Savage opened his cell door to lock him down. As she opened the door plaintiff rushed towards her in a threatening manner. Officer Savage tried to spray him with pepper spray, but the spray did not work and plaintiff grabbed her by the arm and pulled her into the cell with him. Plaintiff and the other inmates grabbed Savage around the neck and started slamming her head into a metal table. Officer Brockwell and several other officers came to Officer Savage's rescue and were able to get plaintiff off of her. Officer Alexandra Johnson grabbed him from behind and ended up on the floor with plaintiff on top of her. Finally, Officer Chris Droke and Supervisor Steve Jacobs arrived and were able to pull Searcy off of Savage and Johnson. Officers Johnson and Savage were taken to the emergency room where Johnson was treated for chemical burns, multiple bruises, and two herniated discs in her back which caused her to miss four months of work. Officer Savage was treated for a mild concussion, and missed four days of work recovering from her injuries. (Doc.#30, Savage affidavit and Johnson affidavit). Plaintiff does not report that he received any specific injuries in this altercation.

      The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The United States Supreme Court recently held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992). In extending *Whitley* to

all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in Whitley arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

Id. (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate.

While a prisoner need not show "serious or significant injury" in an excessive force claim against prison officers where the force used was unnecessary and wanton, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9.

Four months after the incident plaintiff filed this complaint in which he claims generally that he was "beaten down" by the defendants resulting in injuries to him. Plaintiff does not describe the incident any further and the Court is left with only the affidavits of the defendants from which to gather the facts. The undisputed evidence shows that force became necessary in order to regain control of plaintiff after he attacked Officer Savage. Plaintiff and other inmates grabbed Officer

15

Savage by the arm and neck, pulled her into the cell, and slammed her head on a metal table. When Officer Johnson came to her rescue she ended up on the floor with the plaintiff on top of her. In contrast to Savage, who suffered a concussion, and Johnson, who suffered a serious back injury, there is no evidence of any injury to Searcy. Searcy's claim that he suffered an injury when he was beaten by the officers is only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses. "By definition, allegations do not suffice for summary judgment purposes-- evidence is what controls (Rule 56(e))." *Burton v. Kuchel*, 865 F.Supp. 456, 464 (N.D.Ill. 1994).

In applying the factors articulated by the Supreme Court to determine whether any of these defendants maliciously and sadistically applied excessive force to subdue plaintiff after he assaulted at least two officers, the Court finds as a matter of law that the defendant's options were limited to some use of force to restore discipline and there is no evidence that the force applied was excessive. As a result, all of these defendants are entitled to summary judgment on the excessive force claim because a reasonable jury could not infer from the evidence that any of the defendants acted with malicious and sadistic intent, or that they used excessive force while defending themselves from plaintiff's vicious attack and then bringing him under control.

**Lauderdale County Commission**

The plaintiff has named the Lauderdale County Commission as a defendant in this action. In *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-91 (1978), the United States Supreme Court held that municipalities and other local bodies can be treated as persons for purposes of a § 1983 action. In addition, the Court held that local bodies can be sued directly for constitutional violations caused by "a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officials." *Id.* The Court, however, rejected liability based on the theory of *respondeat superior* and limited recovery to instances in which "execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Owens v. Fulton County*, 877 F.2d 947 (11th Cir. 1989), *quoting Monell*, 436 U.S. at 694. The plaintiff's complaint does not allege any facts to indicate that he suffered a constitutional deprivation due to a policy statement, ordinance, regulation or decision adopted by the Lauderdale County Commission. In view of the foregoing, summary judgment should be granted in favor of the County Commission and the Commission is hereby dismissed from this action.

### Sheriff Billy Townsend

Plaintiff also names Sheriff Billy Townsend as a defendant, but has not alleged that Sheriff Townsend was personally involved in depriving him of adequate medical care or using excessive force on him Plaintiff simply attempts to implicate Sheriff Townsend through the concept of *respondeat superior*. However, "[t]here is no *respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978) and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994)). Absent some allegation that Sheriff Townsend knew of, sanctioned, participated in or was otherwise "affirmatively linked" to the acts here complained of, the claim against defendant Townsend is insufficient to state a cause of action under 42 U.S.C. § 1983. Accordingly, this action is due to be dismissed as to defendant Townsend.

### Relief Requested

As part of the relief sought, Savage requests that he be released from segregation, and all

charges against him expunged from his record. These types of relief, however, are not appropriate in an action pursuant to 42 U.S.C. § 1983. A state prisoner may challenge the "fact or duration" of his imprisonment only by way of a petition for writ of habeas corpus. *Preiser v. Rodriquez*, 411 U.S. 475 (1973); *Watson v. Briscoe*, 554 F.2d 650 (5th Cir. 1977). The instant complaint cannot be construed to be a petition for writ of habeas corpus because it does not name any appropriate habeas respondent. A petition for writ of habeas corpus is properly directed to the person having custody of the petitioner, and in this case, none of the named defendants fill that role.

For the reasons set forth above, defendants' special report is considered a motion for summary judgment, and, as such, is due to be GRANTED and all of plaintiff's claims are due to be DISMISSED WITH PREJUDICE. An appropriate judgment will be entered.

DONE this the __18__ day of __October__, 2001.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE